Judge Mills
delivered the Opinion of the Court.
The complainants, to be relieved against an adverse elder grant, set up the following entry, in the name of their ancestor:
“July 17, 1781.
Jacob See enters 1000 acres, upon a Treasury warrant, on the waters of Hardin’s creek, joining the lands of Thomas Prather on the north, beginning on Prather’s line, 120 poles from his corner in Clough Overton’s line, and then running square with Jiis line 400 poles, and to extend west, across Hardin’s creek, for quantity, along Prather’s line.”
It is evident that to ascertain the position of this entry, it is necessary to show the ■true position of Thomas Prather’s and Clough Overton’s claims, and show their validity.
There is no attempt to do this by supporting their entries; nor indeed is there any entry or survey in the name of Clough Overton filed. An entry in the name of Prather is filed, but there is no proof identifying its calls, or shewing that they are correct and could have been found on reasonable enquiry. To supply this, two surveys are filed, in the name of Prather, which are dated on the 4th *369 September, 1781, about two months after the entry of Seay was made. To remedy this defect, proof is made by two witnesses, that Thomas Prather had two surveys made four or five days before tbe try of Seay, nearly on the same ground covered by the present surveys, and that the surveyor who made them was killed by the sayages before he got home, and thus the field notes 'were lost, and the 'two last surveys now exhibited bad consequently to be made afterwards on the same plan, and without any variation on tbe line, which Seay calls to adjoin.
Evidence ^^the”' naLcTof Bullockwascalled Overton’s e en"
Private unrecorded survey, notorious at the time, both as to its name and position, may answer the calls of an entry.
Proof to sustain the call for a survey, by a name different from the record, must be entirely full.
To supply the defect of a claim, in the name of Clough Overton, a patent is filed in the name of Edward Bullock for 2000 acres, reciting a survey made in the name of said Bullock, on the 27th October, 1780, about eight months before the entry of Seay was made, and proof is made by the same two witnesses, that this survey in the name of Edward Bullock, went by the name of Clough Overton.
It must strike every one that the parol evidence should be strong and clear to make up these defects or mistaken calls of tbe entry of Seay before it can be established. -
It is true, a private or unrecorded survey in the name of Prather, might answer as a locative call; but not only the name, but the actual position of such a survey must he notoriously known to those conversant in the vicinity of the object, before it can sustain an entry.
Likewise, the proof ought to be clear and satisfactory, that the survey of Clough Overton, was notoriously known, and that its position was likewise familiar to a majority of those conversant in the neighborhood, before that the entry of Seay could be attached to the survey of Bullock, by Clough Overton’s name. The record name is against such evidence; of course the necessity is doubled for proof, strong and so decisive as to demand unhesitating belief.
Upon both these points, the testimony is. deficient. Bullock’s survey is not shown to have acquired such a degree of notoriety by Overton’s name, as to pre *370 elude all doubt in the mind of a subsequent locator, whether Bullock’s survey was intended, especially, while the record told him that it was not the survey called for.
Evidence offered to prove the notoriety of the survey called for, held insufficient.
Words notorious and noloed to bemused by the witness in an impíopsotheUdepositions con•strued.
But if in this we should be mistaken, the objection to the want of notoriety sufficient in Prather’s surveys, at the date of "Seay’s entry, is conclusive against this entry. That a private survey, the field notes of which were in the pocket of the surveyor, and he killed immediately, should, in not more than ■five days, become notorious to a majority of those conversant in the vicinity, is so near an impossible, and such a very improbable, event, that it cannot be easily .admitted, unless it was accounted for by extraordinary circumstances. It is against the facts, occurrences and current of events of that day. Many, and even a majority, might be informed that such a survey was made, and as the survey approached near to a station then existing, it is possible that the fact, that such surveys had been executed in the neighborhood, might have been communicated to most of the inhabitants of that station. But it is entirely improbable that a majority were acquainted with, or could have pointed out the spot where the greatest portion of the land lay, which was necessary to be known, and indeed, when there were no field notes to be had, as a guide to lead to the corners and exhibit the courses and length of the lines, it certainly would be necessary that a majority of those conversant in the neighborhood "should be able to point where some of the lines and corners could be found, and that they could then be easily traced.
It is true, the two witnesses who speak on these subjects, do depose that these surveys were notorious when Seay’s entry was made. But without charging them with intending to depose to facts untruly, we are led to believe that they were mistaken jn the meaning of the words “notorious” and “notoriety,” as used in the decisions of our courts touching entries, and that instead of intending to Say that these surveys were well known to a majority of all those conversant in the neighborhood," *371 they intended to communicate the idea, that' these surveys were notorious to themselves; a mistake not unfrequent among unlettered men, who have-not been in the habit of fixing a precise and definite-meaning to the terms which they employ, in communicating their ideas. Nothing remarkable attended the execution of these surveys. Not more attended on making them than were necessary to perform the duty. These two witnesses belonged to that party, and no doubt acquired and retained an accurate knowledge of the places ■ where these lines and corners were situated, and hence, without attending to the meaning of the expression,, when put to them by interrogatories, they allege that they were notorious, and well known. We are fortified in this conclusion by attending to the whole of each-deposition, and thus extracting therefrom the mean» ing of the deponents. Several expressions, which we need not enumerate, employed by them, conduce to show that such was the meaning which they intended to convey.
It therefore follows, that the court below was correct in deciding this entry invalid, and this conclusion renders it unnecessary that w.e should go into the various questions made and debated in the cause, among which is the effect of lapse of time. For it is unnecessary that we should determine, whether this entry is lost by the laches of its owner, when it has no validity, to be impaired by delay-.
Decree affirmed with costs.